# In the United States Court of Federal Claims

COMPETITIVE INNOVATIONS, LLC,

    *Plaintiff,*

v.

THE UNITED STATES,

    *Defendant,*

and

RELI GROUP, INC. & HIVE GROUP, LLC,

    *Defendant-Intervenors.*

No. 24-1773
(Filed: February 21, 2025)[1]

*Timothy B. Mills*, Mills Law Group, LLP, Washington, DC, for Plaintiff.

*Mariana Teresa Acevedo*, Civil Division, United States Department of Justice, Washington, DC, for Defendant.

*James Ryan Frazee*, Wiley Rein LLP, Washington, DC, for Defendant-Intervenor RELI Group, Inc.

*Alexander Brewer Ginsberg*, Fried, Frank, Harris, Shriver & Jacobson LLP, Washington, DC, for Defendant-Intervenor HIVE Group, LLC.

**OPINION AND ORDER**

**LERNER,** *Judge*.

    This is a post-award bid protest that comes before this Court on a Motion to Supplement and Complete the Record. Plaintiff Competitive Innovations, LLC ("CI") protests the Transportation Security Administration's ("TSA" or "the Agency") decision to exclude its quotation for Integrated Program Management Support Services ("IPMSS") from consideration as ineligible and untimely. On November 22, 2024, the Government filed the Administrative Record in this case. *See* ECF No. 29. On December 17, 2024, Plaintiff filed a Motion to Supplement and Complete the Administrative Record. *See* Pl.'s Mot. to Suppl. & Complete the Admin. R., ECF No. 34; Mem. in Support of Pl.'s Mot. to Suppl. & Complete the Admin. R.,

---

[1] This Opinion was initially filed under seal on January 30, 2025. *See* Opinion and Order, ECF No. 43. The parties were afforded fourteen days to propose redactions. *Id.* The parties did not. Accordingly, the Court issues the public version without redactions.

ECF No. 35 (hereafter "Pl.'s Mot."). The Motion seeks to supplement the record with documents from an earlier 2019 procurement in the IPMSS program. Pl.'s Mot. at 6–8. It also asks to add materials related to the Agency's evaluation in this procurement that Plaintiff believes have been omitted. Pl.'s Mot. at 10. Defendant and Defendant-Intervenor RELI Group, Inc. ("RELI Group") responded on January 7, 2025, opposing both requests. Def.'s Resp. to Mot. to Am./Correct Administrative R., ECF No. 38, (hereinafter "Def.'s Resp."); Def.'s-Intervenor's Resp. to Mot. to Am./Correct Administrative R., ECF No. 39 (hereinafter "Intervenor's Resp.").

For the reasons explained below, Plaintiff's motion is **DENIED**.

I.   Factual Background[2]

   A.   The Solicitation, Labor Categories, and Plaintiff's Proposed Category

The contract at issue is a Blanket Purchase Agreement ("BPA") to provide professional services to support, among other areas, TSA's acquisition processes. Am. Compl. at 1, ECF No. 33-1. TSA issued the Request for Quote ("RFQ" or "Solicitation") for the procurement on February 16, 2023. *Id.* at 20. The parties refer to the challenged procurement as "IPMSS II," to distinguish it from an earlier procurement. *See, e.g.*, *id.*; Def.'s Resp. at 1–2; Intervenor's Resp. at 2. IPMSS II is a Federal Supply Schedule ("FSS") procurement conducted under Federal Acquisition Regulation Subpart 8.4 ("FAR 8.4"). Am. Compl. at 22. The RFQ required offerors to submit a price quote. *Id.* at 23. The Solicitation listed the "contractor Labor Category Descriptions" that the Agency sought. *Id.* at 65. These "labor categories" or "LCATs" described the work and qualifications for each category. *Id.* at 23.

For each labor category listed, the offerors needed to provide in their price quote a corresponding category from their FSS list—a separate contract approved by GSA. *Id.* The RFQ stated that the Agency's "[l]abor categories, labor category descriptions, education/experience, and rates must be clearly mapped to your GSA schedule contract." *Id.* at 66. It also explained:

> The Quoter provided GSA Labor Categories/Descriptions will be evaluated to confirm that they clearly map to the labor categories and qualifications specified by the Government. *If any of the Labor Categories/Descriptions do not clearly map to the labor categories and qualifications provided by the Government, the Quoter may be eliminated from award consideration.*

*Id.* at 23. Despite this clear language, Plaintiff alleges that the RFQ did not "[r]equire exact mapping of labor categories." *Id.* at 21.

In particular, TSA instructed offerors to match to an "Acquisition Support Specialist" category. *Id.* at 25. The category's description emphasized specific knowledge and experience of procurement laws, regulations, and processes, including those specific to federal procurement,

---

[2] The Court summarizes the allegations in the Amended Complaint relevant to resolve this pending motion. It also cites the Administrative Record as filed by the Government for the purposes of assessing its sufficiency.

like the System for Award Management ("SAM"). *Id.* In response, Plaintiff proposed a corresponding "Associate Management Consultant" category. *Id.* at 26. This proposed category did not reference acquisition or procurement. *Id.* Plaintiff admits that its proposed category "does not exactly match." *Id.*

### B. The 2019 IPMSS I Procurement

The Agency conducted a prior version of this procurement in 2019, which the parties refer to as "IPMSS I." Am. Compl. at 3–4; Def.'s Resp. at 1–6; Intervenor's Resp. at 2. Plaintiff claims that the IPMSS I procurement also required that offerors map labor categories but did not require them to be an "exact match." *Id.* Plaintiff contends the 2019 RFQ also included an "Acquisition Support Specialist" that was the "functional equivalent" to the category at issue in the instant procurement. *Id.* at 18–19.

Plaintiff asserts that an awardee under the 2019 procurement, Defendant-Intervenor RELI Group, received an award even though it proposed labor categories that did not mention "acquisition." *Id.* at 7–18. Plaintiff believes that TSA must have found RELI Group's category sufficiently mapped to the Agency's, despite the lack of acquisition-related language. *Id.* Plaintiff also claims that RELI Group received subsequent IPMSS I task orders. *Id.* at 19.

### C. TSA's Evaluation of Plaintiff's Labor Category

On February 13, 2024, the TSA contracting officer sent Plaintiff a letter that stated, among other insufficiencies, "CI's Associate Management Consultant equivalent LCAT description does not clearly map to that of TSA's Acquisition Support Specialist LCAT description." *Id.* at 27. The Agency explained that Plaintiff could submit a revised quote. *Id.*

Plaintiff submitted a timely revised quote. *Id.* at 28. However, it did not revise its labor category. *Id.* Instead, it stated that "CI unequivocally offers and commits to provide personnel that meet all requirement[s] of the labor category description." *Id.* at 29. Plaintiff also contested the Agency's determination that its proposed category did not clearly map. *Id.* at 29–32. Pointing to the 2019 procurement, Plaintiff claimed that TSA previously approved prior labor categories that similarly lacked references to acquisition or procurement. *Id.*

On March 26, 2024, the Agency found again that Plaintiff's labor category did not "clearly map." *Id.* at 34–35. It requested Plaintiff to "confirm where in CI's GSA LCAT Associate Management Consultant description that it states services in contracting, procurement, or acquisition activities." *Id.* at 35. The Agency gave CI until 10:00 AM on April 3, 2024 to submit a final revised quote. *Id.* After receiving this notice, Plaintiff sought to modify its Associate Management Consultant category with GSA before the deadline. *Id.* at 38. GSA ultimately finalized this process around 12:00 PM, after TSA's deadline. *Id.* at 40. The Agency determined that CI's proposal as modified was late. *Id.* at 42. Additionally, TSA again found CI's unmodified category did not clearly map to the Government-provided one. *Id.* at 42. CI was eliminated from consideration. *Id.*

### D. Plaintiff's Challenges Relevant to this Motion

In Count One of its Amended Complaint, Plaintiff claims that the Agency's finding that CI's labor category did not "clearly map" to TSA's sought-after category was arbitrary and

3

capricious. *Id.* at 43–47. Plaintiff's challenge relies on a legal conclusion. It asserts that in IPMSS I, TSA's award to RELI Group applied a "default rule." *Id.* at 44. Under that purported rule, (1) differences in job titles were not dispositive of whether categories "map," and (2) offering a labor category without the minimum experience required was not disqualifying if the offeror committed to meeting the requirement. *Id.* at 45. Thus, even though RELI Group lacked acquisition-related language in 2019, its category "clearly mapped." *See id.* Plaintiff reasons that by coming to a different conclusion in the IPMSS II procurement than it did in the prior one, the Agency failed to "apply this default rule" and therefore acted arbitrarily. *Id.* at 45–46.

Relatedly, Plaintiff also suggests that the Agency's determination of whether a labor category "clearly maps" is a legal question that TSA evaluated incorrectly. *See, e.g.*, Am. Compl. at 20 ("As a matter of law and regulation, the Agency is required to evaluate quotations . . . to ensure that the quoters' proposed LCATs legally map . . . ."). Plaintiff argues that but for the Agency's erroneous evaluation, it would not have submitted a revised proposal after the deadline. *Id.* at 46.

### E. Plaintiff's Motion to Supplement and Complete the Administrative Record

In its instant motion, Plaintiff seeks both supplementation and completion of the Record. First, Plaintiff requests the Agency supplement the Record with documents related to the 2019 IPMSS I procurement. Plaintiff asks for the following documents to be included in the Record: IPMSS I's RFQ; parts of RELI Group's final quote; the Agency's 2019 evaluation of and award to RELI Group; and its award of subsequent task orders to RELI Group. Pl.'s Mot. at 7–8.

Plaintiff contends that this information is necessary to resolve Count One of the Complaint. Plaintiff submits, without citation to authority, that "[i]t is per se arbitrary and capricious for the Agency" to determine that RELI Group's LCATs clearly mapped in 2019 and then "make a contrary determination that CI's . . . [category] does not clearly map." Pl.'s Mot. at 6 (faulting [TSA] for "depart[ing] from what the Agency had previously determined [was] the correct legal standard to be applied"). Plaintiff claims that evidence from the IPMSS I procurement would be "near-conclusive evidence" that the Agency's opposite decision in IPMSS II was arbitrary. *Id.* at 4.

Second, Plaintiff separately requests the Agency complete the record based on the supposition that information relevant to its labor category mapping decision is missing. Pl.'s Mot. at 9. Plaintiff asserts that the Court's review of this question "begins and ends with the question of whether the Agency applied the correct legal standard." *Id.* CI argues that the "AR is devoid of documentation" of (1) "[a]ny such legal standard" or "legal definition . . . for determining questions of LCAT mapping," (2) "instructions to the Agency evaluators with respect to any legal standard for mapping questions," and (3) application "of any legal standard by the Agency evaluators and the Contracting Officer . . . including why such Agency determination was in accordance with the correct law of LCAT mapping." *Id.* at 9–10.

Plaintiff asks this Court to "[o]rder and direct the Government to search for and include" these purported documents in the Administrative Record. *Id.* at 11. Plaintiff clarified that it does not seek drafts, internal deliberative material, and informal notes related to this issue. Pl.'s Reply at 10, ECF No. 41.

## II. Jurisdiction

The United States Court of Federal Claims has jurisdiction over protests by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract . . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). Interested parties are "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001). A plaintiff must show that but for "the alleged error[s] in the procurement process," it had a "substantial chance" of winning the award. *Mission1st Grp., Inc. v. United States*, 144 Fed. Cl. 200, 209 (2019) (citing *Weeks Marine v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009)). Plaintiff is a disappointed bidder for the IPMSS II contract and claims that but for the Agency's errors it would have received a bid. This Court has jurisdiction.

## III. Legal Standard

### A. Review of Procurement Actions

In a bid protest action, the Court "review[s] the agency's decision pursuant to the standards set forth in" the Administrative Procedure Act ("APA"). *CAN Softtech, Inc. v. United States*, 173 Fed. Cl. 480, 483 (2024), *recons. denied*, No. 24-1009, 2024 WL 5265450 (Fed. Cl. Dec. 20, 2024) (citing 28 U.S.C. § 1491(b)(4)). The Court's task is to apply this standard "to the agency decision based *on the record the agency presents*" to the Court. *Id.* (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379–80 (Fed. Cir. 2009)).

### B. Motion to Supplement the Administrative Record

A motion to supplement the record seeks to add materials that an agency did not consider but the movant asserts the Court should review to permit a proper evaluation of the agency's decision. *See Joint Venture of Comint Sys. Corp. v. United States*, 100 Fed. Cl. 159, 167 (2011). This is an extraordinary remedy; supplementation "should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom*, 564 F.3d at 1379 (quotation and internal quotation marks omitted).

The Court should grant a request to supplement "only if necessary for effective judicial review or if the existing record cannot be trusted." *Crowley Gov't Servs. v. United States*, 171 Fed. Cl. 453, 467 (2024) (quotation omitted). "The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the arbitrary and capricious standard into effectively de novo review.'" *Axiom*, 564 F.3d at 1380 (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)). The Court must evaluate "whether the record before the agency was sufficient to permit meaningful judicial review" before granting a motion to supplement. *Id.* at 1380. "Judicial review is 'effective' if it is consistent with the APA." *AgustaWestland N. Am., Inc. v. United States*, 880 F.3d 1326, 1331 (Fed. Cir. 2018) (citing *Axiom*, 564 F.3d at 1381).

If the record does not "frustrate[] judicial review as to the ultimate question of whether the . . . [award] was arbitrary and capricious," it should not be supplemented. *Id.* at 1332 (citing *Axiom*, 564 F.3d at 1379–80). Limited exceptions may be made "to take a deeper dive into

5

information that is already in the administrative record" or to help the Court better understand information within the record. *Superior Waste Mgmt. LLC v. United States*, 169 Fed. Cl. 239, 280 (2024) (quoting *FirstLine Transp. Sec., Inc. v. United States*, 116 Fed. Cl. 324, 326–27 (2014)). "[S]upplementation of the administrative record is permitted to correct mistakes and fill gaps." *ViON Corp. v. United States*, 122 Fed. Cl. 559, 568 (2015) (citing *L–3 Commc'ns EOTech v. United States*, 87 Fed. Cl. 656, 672 (2009)). But if on the record "the position of both parties is fully understood" and "the existing information is sufficient to resolve the case effectively," supplementation is unwarranted. *FirstLine Transportation*, 116 Fed. Cl. at 326–27 (citations omitted).

### C.  Motion to Complete

A motion to complete the administrative record seeks to add materials that are relevant to the challenged agency decision and that were considered by the agency in reaching its decision or generated during the decision-making process. *BHB Ltd. P'ship v. United States*, 147 Fed. Cl. 226, 229 (2020). Completion is appropriate if the agency "omits information that was generated and considered" as part of the procurement. *Smith v. United States*, 114 Fed. Cl. 691, 695 (2014), *aff'd*, 611 F. App'x 1000 (Fed. Cir. 2015). While an administrative record is typically presumed to be complete, the presumption of regularity may be rebutted by "clear evidence of material that was generated or considered by the agency but excluded from the record." *BHB Ltd.*, 147 Fed. Cl. at 229 (citing *Poplar Point RBBR, LLC v. United States*, 145 Fed. Cl. 489, 494 (2019) (hereinafter "*Poplar Point I*")).

It is a plaintiff's burden to make this showing. *See, e.g.*, *Rotair Aerospace Corp. v. United States*, 167 Fed. Cl. 571, 575 (2023) (denying motion to complete because plaintiff "ha[d] not provided clear evidence showing the [agency] omitted documents"). The presumption of regularity may be rebutted when the government "acknowledge[s] . . . that it had inadvertently excluded documents from the administrative record." *Smith*, 114 Fed. Cl. at 695. But "broad requests" for documents that "amount to bare assertions that there must be other documents relating to the [agency's] . . . review . . . do not constitute clear evidence that there are relevant documents missing from the existing record." *Rotair*, 167 Fed. Cl. at 576.

## IV.  Discussion

### A.  The Record Cannot Be Supplemented Because Documents from the 2019 Procurement Are Unnecessary to Resolve the Merits of Plaintiff's Protest.

The requested 2019 procurement documents are not "necessary for effective judicial review" of Plaintiff's claim that the Agency arbitrarily determined CI's labor category did not properly map to TSA's category. *Crowley Gov't Servs.*, 171 Fed. Cl. at 467 (quotation omitted).

#### 1.  <u>Supplementation with Evidence of Prior Procurements Is Improper Because Each Procurement Stands Alone.</u>

Plaintiff "contend[s] that because the two solicitations are effectively the same procurement, these inconsistencies demonstrate that the [Agency's] conclusions with respect to the present award decision are arbitrary and capricious." *SSI Claimsnet, LLC v. United States*, 170 Fed. Cl. 725, 740 (2024) (citations omitted). *See also* Am. Compl. at 45–46 (alleging that

TSA's action is arbitrary because it purportedly applied a "default rule" in 2019 that it did not apply in 2024).

This is not a basis for supplementation. Evidence of inconsistency between prior procurements is neither necessary nor relevant to reviewing whether the instant action is arbitrary and capricious. *SSI Claimsnet*, 170 Fed. Cl. at 740. When evaluating agency action in bid protests, "[e]ach procurement stands alone, and a selection decision made under another procurement does not govern the selection under a different procurement." *SDS Int'l. v. United States*, 48 Fed. Cl. 759, 772 (2001) (alteration original) (quoting *Renic Corp., Gov't Sys. Div.*, 1992 WL 189192, at *3 (Comp. Gen. July 29, 1992)) (rejecting argument that the evaluation of a party in an earlier procurement "demonstrate[d] that the evaluation in this case was improper" because "[t]he decisions in the two procurements were made separately"). *Accord Eskridge & Assocs. v. United States*, 142 Fed. Cl. 410, 424 (2019) *aff'd*, 955 F.3d 1339 (Fed. Cir. 2020) (rejecting evidence of 2016 procurement as "immaterial" to whether action in subsequent 2017 procurement was arbitrary).

Accordingly, this Court has repeatedly denied requests to supplement the record with materials from a prior, separate procurement as unnecessary to conduct effective judicial review. For example, in *SDS International*, a request to supplement a protest of an F-4 airplane training procurement with protected materials from a separate procurement for F-117 airplanes was rejected because "the evaluations were conducted separately," and thus, "the records of the F-117 procurement [were] not relevant to the resolution of the F-4 award." 48 Fed. Cl. at 766. In *Poplar Point RBBR, LLC v. United States*, the Court declined to supplement a 2020 procurement with separate 2014 and 2015 solicitations on which plaintiff claimed it relied because those documents were not "referenced" in the subject solicitation. 147 Fed. Cl. 201, 213–15 (2020) (hereinafter "*Poplar Point II*"). The Court found that "[t]he relevant inquiry in this case is whether [the agency's] decision . . . was reasonable and consistent with the [solicitation's] terms for *this* procurement," not prior ones. *Id.* (emphasis added). *Cf. Guardian Moving & Storage Co. v. United States* 122 Fed. Cl. 117, 132, 132 n.6 (2015), *aff'd*, 657 F. App'x 1018 (Fed. Cir. 2016) (rejecting a motion to supplement a 2014 protest with a solicitation and prior winning bid from a 2007 procurement because "even if such evidence revealed an inconsistency . . . an agency is not bound by its actions in a previous procurement").

Supplementation with prior procurement material is improper even "when there are similarities between two procurements" or if the solicitation is "substantively identical." *SSI Claimsnet*, 170 Fed. Cl. at 741 (citation omitted). This is because "a change in the Government's view on precisely the same question, made in the context of a different solicitation, does not require any explanation." *Id.* Thus, the Court has even denied supplementation with documents from a prior solicitation that a plaintiff had alleged was "merely renumber[ed]" because the record showed that "the [agency] started anew" by issuing a new solicitation and source selection plan. *Id.*

  2.  <u>Supplementation Is Improper Because IPMSS I Was a Separate Procurement and Effective Judicial Review Is Possible on this Record.</u>

Supplementation is improper because the IPMSS I and IPMSS II procurements are separate. "If [IPMSS I] and the Solicitation at issue here were part of a single government action (i.e., procurement) subject to review under § 706, then supplementation may be appropriate." *Id.*

7

at 740. But here, Plaintiff alleges they are distinct procurements with separate contract numbers. Compl. at 1 (IPMSS II contract number), 3 (different IPMSS I contract number). Further, the "Administrative Record demonstrates that" TSA "started anew" with IPMSS II. *SSI Claimsnet*, 170 Fed. Cl. at 741. IPMSS I was a separate, "previous vehicle" that ended on May 9, 2024. AR 6. For IPMSS II, the Agency launched a new RFQ, with new bids and new evaluations. *Id.*

Thus, "even if evidence about what had occurred during the prior [IPMSS I] procurement . . . revealed an inconsistency, it would be of no assistance to [Plaintiff] here because [TSA] is not bound by its actions in [the IPMSS I] procurement." *Guardian Moving*, 122 Fed. Cl. at 132 (citing *Griffy's Landscape Maint. LLC v. United States*, 51 Fed. Cl. 667, 671 (2001)). That TSA, "in a separate procurement with different specifications, may have found a proposed [labor category] acceptable for the same position in [IPMSS I], does not require that the agency find the same way in this procurement." *Caddell Constr. Co. (DE), LLC v. United States*, 146 Fed. Cl. 669, 679 (2020) (citing *SDS Int'l*, 48 Fed. Cl. at 772). Since IPMSS I and II are "separate government actions . . . supplementation is not necessary to permit meaningful judicial review of the later, independent action . . . regardless of the similarities between" them. *SSI Claimsnet*, 170 Fed. Cl. at 740.

Supplementation is also unwarranted because the 2019 procurement's findings on labor categories were neither referenced by—nor relevant to—the current procurement. Plaintiff does not allege that the Agency considered documents from IPMSS I. Pl.'s Mot. at 3–6. And the Court's review of this record does not indicate that the Solicitation stated that any 2019 documents or results would be considered. When the IPMSS I procurement is mentioned in the record as produced, it is only to note the history of the IPMSS program. AR 6–7 (noting 2019 procurement only in context of "Procurement History" and not mentioning mapping). These limited references do not factor into the evaluation criteria. *Id.* at 241–68 (evaluation strategy).

Since TSA's 2019 IPMSS I procurement was not referenced in the subject RFQ as relevant to evaluating offerors labor categories, it is "irrelevant to the court's determination." *Poplar Point II*, 147 Fed. Cl. at 213. Moreover, the record as produced indicates that the Agency sought to conduct this procurement differently than the 2019 procurement. For example, the "Acquisition Background and Objectives" states the Agency intended "to move from the current centralized services procurement" to a "new model." AR 5. Since the IPMSS I procurement was "conducted separately, the records . . . are not relevant to the resolution of the protest of" IPMSS II. *SDS Int'l*, 48 Fed. Cl. at 748.

This Court has allowed supplementation with a single, narrowly focused deposition when the plaintiff alleged that "the same [contracting officer] as a matter of past practice" had supposedly waived a mandatory requirement in a prior procurement but applied it to the plaintiff in a later procurement. *Int'l Res. Recovery, Inc. v. United States*, 59 Fed. Cl. 537, 539 (2004) (hereinafter "*Int'l Res. I*"). But the same Court later narrowed its decision when denying a subsequent request for a prior procurement's records. *Int'l Res. Recovery, Inc. v. United States*, 60 Fed. Cl. 1, 7 (2004) (hereinafter "*Int'l Res. II*"). It explained an agency's isolated instance of relaxing a requirement does "not establish that the [agency] had a past practice" relevant to evaluating the procurement. *Id.* More importantly, the Court ultimately found "no legal authority which holds that a single instance of the Government's 'past practice' of relaxing a solicitation requirement in a given source selection mandates future relaxations of that requirement in a subsequent source selection." *Int'l Res. Recovery v. United States*, 60 Fed. Cl.

428, 431 (2004) (hereinafter "*Int'l Res. III*"). It also found the plaintiff's past practice theory "not reasonable in the face of a solicitation that clearly" stated the mandatory requirement. *Id.* at 430.

Here, extending a narrow exception is unwarranted. Plaintiff identifies only a "lone incident"—the 2019 procurement and follow-on awards—which does not on its own "establish that the [TSA] had a past practice of waiving the requirement" that labor categories clearly map. *Id.* at 431. In addition, CI's reliance on a "so called 'past practice'" theory would "not [be] reasonable [here] in the face of a solicitation that clearly required" offerors' labor categories to map with the Agency's or run the risk of being eliminated from consideration. *Id*. at 430. *See also, e.g.*, AR 317, 874 (original and amended solicitation sections addressing category mapping). And, as detailed above, Plaintiff offers "no legal authority" to suggest that purportedly "relaxing [the mapping] requirement" in the 2019 procurement "mandates future relaxations of that requirement in" IPMSS II. *Int'l Res. III*, 60 Fed. Cl. at 431. *Cf. Poplar Point II*, 147 Fed. Cl. at 214 (declining to apply past practice supplementation because it was not relevant to the merits of the case).

Further, the 2019 IPMSS I procurement's documents are unnecessary. To resolve a dispute about whether a skill mapping was "an insufficient match to the Government's [category]," the Court "look[s] to the language of the Solicitation itself," relevant caselaw and interpretation, and the proposals the parties submitted. *Sys. Dynamics Int'l, Inc. v. United States*, 167 Fed. Cl. 780, 790–91 (2023). *See also Kearney & Co., P.C. v. United States*, No. 24-162, 2024 WL 2209767, at *6 (Fed. Cl. Apr. 30, 2024) (resolving "whether the RFQ required the LCAT . . . to explicitly include [certain] qualifications and experience" based on the solicitation and governing law); *Golden IT, LLC v. United States*, 157 Fed. Cl. 680, 696 (2022) (examining the solicitation instructions and other agency statements to determine whether they "communicate[d] that a quoter's various LCATs must map precisely to the government's").

The record as produced is sufficient for factual review of TSA's findings. It includes the RFQ's evaluation criteria, instructions to offerors, evaluation results, and final trade-off analysis. AR 241–68 (evaluation strategy), 269–875 (solicitation and amendments), 1616–1919 (offerors' price quotes), 1920–3586 (price quotes, requests for revision, revised price quotes, and multiple rounds of evaluations), 3596–98 (Trade-Off analysis and award recommendation). Plaintiff provides no reason why this record cannot be trusted.

Nor are the IPMSS 2019 documents necessary for the Court's legal analysis. If, as Plaintiff argues, the Agency violated a "default rule" regarding the evaluation of labor mapping, Am. Compl. at 45–46, the Court has "the administrative record, the relevant statutes, regulations . . . [and] case law to rely upon in making a decision." *N. Carolina Div. of Servs. For Blind v. United States*, 53 Fed. Cl. 147, 159 (2002), *aff'd*, 60 F. App'x 826 (Fed. Cir. 2003). *Cf.* Def.'s Resp. at 8 ("The applicable legal standard of review[,] . . . [whether] the agency's actions [were] arbitrary and capricious . . .[,] can be found in existing case law"). Whether IPMSS I applied the "correct" rule is not relevant because "[e]ach procurement stands alone." *Eskridge & Assocs.* 142 Fed. Cl. at 424 (quoting *SDS Int'l*, 48 Fed. Cl. at 772).

It may be that ultimately the Court finds the Agency's action arbitrary. But that will be determined on the record of this procurement—not by reference to a separate one. The Court cannot grant Plaintiff's request to supplement the record.

### B. Plaintiff Does Not Show Clear Evidence Indicating the Record is Incomplete.

Plaintiff's request to complete the record is unwarranted because it "has not provided clear evidence showing [TSA] omitted documents" that were either considered or generated. *Rotair*, 167 Fed. Cl. at 575.

Plaintiff's reasoning for possible omissions is circular. For CI, the fact that the record does not contain extensive legal interpretation on the mapping issue is evidence that such records exist but were omitted. Pl.'s Mot. at 10 ("[T]he AR is devoid of [this] documentation."); Pl.'s Reply at 4 ("The entire AR . . . is devoid of evidence of the Agency instructing [its evaluators] . . . on how to appropriately and legally evaluate [labor categories]."), ("The entire AR . . . is also devoid of any explanation—much less an adequate explanation [—] of the Agency's action by which TSA determined CI's [LCAT] . . . did not clearly map."). Plaintiff observes that the record lacks documentation of a "legal standard," instructions on applying it, details on how it was applied, and an explanation of why it was correct. Pl.'s Mot. at 10. Plaintiff also protests that "no decision memorandum" is present. Pl.'s Reply at 4. These arguments are unpersuasive.

Bald allegations that decisions in the record lack explanation, without any evidence of actual omissions, are an insufficient basis for a court to order completion. In *BHB Limited*, the Court rejected a plaintiff's open-ended request for "discovery of seven different categories of documents" that "they believe[d] [were] necessary to understand better the agency's decision-making process." 147 Fed. Cl. at 229. There, the plaintiff "d[id] not identify specific documents that should have been included in the record" nor "offer evidence of information that the agency considered." *Id*. Similarly, in *Rotair*, the Court denied a motion to complete that broadly sought "documents relevant to [the Government's] . . . analysis and conclusions" of a specific technical specification because it failed to show "clear evidence that there are relevant documents missing from the existing record." 167 Fed. Cl. at 575–76. *See also Poplar Point I*, 145 Fed. Cl. at 494 (denying motion to complete where primary evidence claimed was that "record does not contain an explanation for" a challenged agency action).

This case is analogous. Plaintiff's wide-ranging demand for documents related to labor category mapping "do[es] not identify specific documents that should have been included in the record but were not, nor do[es] plaintiff[] offer evidence of information that the agency considered but failed to include in the record." *BHB Ltd.*, 147 Fed. Cl. at 229. CI's purported basis for claiming evidence is missing is that the record contains "an insufficient bald statement" about the mapping requirement and "no explanation." Pl.'s Reply at 4. But these claims "amount to bare assertions that there must be other documents." *Rotair,* 167 Fed. Cl. at 576. Plaintiff "fails to provide"—as is its burden—"any evidence showing that there are documents relevant" to the labor category analysis that "TSA omitted from the record." *Id*.

Although inconsistencies or references in the record to external documents may provide grounds to suggest the record is incomplete, Plaintiff does not identify any such issues. Plaintiff protests that "no decision memorandum" regarding the mapping issue is present. Pl.'s Reply at 4. However, the record includes multiple documents that reference labor mapping—including, among them, a report that provides some explanation for the Agency's decision to clarify the Solicitation's mapping requirement because of "potential ambiguity" in the instructions. AR 2210.

Further, the language regarding labor category mapping is consistent throughout the RFQ and the Agency's analysis—giving no indication that any other "decision memorandum" or instructions exist. *See, e.g.*, AR 241–68 (describing evaluation strategy, including to determine whether labor categories clearly map), 315 (describing Section V of RFQ, which denotes the criteria for labor category mapping in language that appears consistent with references in the evaluation strategy), 1496–1979 (documenting price evaluation, including whether labor categories map, with reference to instructions in RFQ Section V), 2193–2226 (same), 2229, 2273, 2275 (initial finding that CI's categories did not clearly map and providing updated RFQ with details on mapping). Plaintiff has the burden to show some basis in the record which suggests documents are missing. It does not do so; rather Plaintiff merely gestures to where it believes "such reference[s]" to these documents might be if they existed. Pl.'s Mot. at 10.

Further, completion may be appropriate when the "Government . . . acknowledge[s] that it had inadvertently excluded documents" from the record. *Smith*, 114 Fed. Cl. at 695 (allowing completion when Government conceded 44 pages of documents were excluded inadvertently). But no such admission has been made here. On the contrary, the Government has stated that "[t]o the extent that documents exist setting forth the standard for award, they have already been produced at page 241 through 268 of the administrative record." Def.'s Resp. at 7. *See also id.* at 1 ("[T]he documents related to evaluation instructions with which CI seeks to supplement the record do not exist, beyond what has already been produced.").

Of course, an agency must provide "a coherent and reasonable explanation of its exercise of discretion," and an action that lacks sufficient explanation may be arbitrary and capricious. *Dell Fed. Sys., L.P. v. United States*, 906 F.3d 982, 992 (Fed. Cir. 2018) (quotation omitted). This question may properly be adjudicated in a future Motion for Judgment on the Administrative Record. *See, e.g.*, *Ekagra Partners, LLC v. United States*, 170 Fed. Cl. 1, 48–50 (2024) (assessing whether agency provided a reasonable explanation based on record evidence). But for the purposes of a Motion to Complete, it is insufficient to simply allege that "the record is not complete because [it] does not contain an explanation for" how TSA evaluated mapping—especially when the record does appear to contain an explanation bearing on this issue and Plaintiff has not offered "clear evidence" to overcome the presumption of regularity. *Poplar Point I*, 145 Fed. Cl. at 494. Thus, Plaintiff does not establish the record is incomplete.

## V.     Conclusion

For the foregoing reasons, Plaintiff's Motion to Supplement and Complete the Administrative Record is **DENIED**. ECF Nos. 34, 35.

**IT IS SO ORDERED.**

s/ Carolyn N. Lerner
CAROLYN N. LERNER
Judge