# In the United States Court of Federal Claims

|  |  |
|---|---|
| COMPETITIVE INNOVATIONS, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>THE UNITED STATES,<br><br>    *Defendant,*<br><br>RELI GROUP, INC.,<br><br>    *Defendant-Intervenor,*<br><br>and<br><br>HIVE GROUP, LLC,<br><br>    *Defendant-Intervenor.* | No. 24-1773<br>(Filed: August 28, 2025)[1]<br>Filed under seal: July 30, 2025<br>Reissued: August 28, 2025 |

*Timothy B. Mills*, Mills Law Group LLP, Washington, D.C., for Plaintiff.

*Mariana Teresa Acevedo*, Civil Division, United States Department of Justice, Washington, D.C., and *Christopher J. Curry*, Office of Chief Counsel, Transportation Security Administration, Springfield, VA, for Defendant.

*James Ryan Frazee, John R. Prairie,* and *W. Benjamin Phillips, III*, Wiley Rein LLP, Washington, D.C., for Defendant-Intervenor RELI Group, Inc.

*Alexander Brewer Ginsberg, Katherine L. St. Romain,* and *Robert C. Starling*, Fried, Frank, Harris, Shriver & Jacobson LLP, Washington, D.C., for Defendant-Intervenor Hive Group, LLC.

**OPINION AND ORDER**

**LERNER,** *Judge*.

**I.    Introduction**

On December 11, 2023, Plaintiff Competitive Innovations, LLC ("CI") submitted a bid for a contract with Defendant, the Transportation Security Administration ("TSA" or "the

---

[1] This Opinion was filed under seal on July 30, 2025. Op., ECF No. 82. Neither party proposed redactions. ECF No. 84. Instead, Plaintiff filed a Motion to Amend the Opinion. ECF No. 87. The Motion was denied. ECF No. 91. However, footnote two has been modified.

Agency"). Tab 51 at AR 1616; *see generally* Pl.'s Revised Mot. for J. on the Admin. R. (hereinafter "Pl.'s MJAR"), ECF No. 62. On February 13, 2024, the Agency rejected the bid for containing a material error. Tab 61 at AR 2227–29. For over one month, Plaintiff made no attempt to correct this error, even with the opportunity to submit a revised bid. *See* Tab 17.1 at AR 697; Pl.'s MJAR at 7. Only after the Agency rejected its revised bid and set a deadline to submit a second revision did Plaintiff begin the process of correcting the error. Pl.'s MJAR at 7. Nevertheless, CI submitted its correction after the deadline. Tab 101 at AR 4390.

CI challenges both the Agency's decision to reject the late modification and its finding that the original bid contained a disqualifying error. Pl.'s MJAR at 1–2. Before the Court are Plaintiff's Motion, as well as Cross-Motions for Judgment on the Administrative Record by Defendant and Defendant-Intervenors RELI Group, Inc. ("RELI") and Hive Group, LLC ("Hive"). *Id.;* Def.'s Cross-Mot. for J. on the Admin. R. (hereinafter "Def.'s MJAR"), ECF No. 67; Hive's Cross-Mot. for J. on the Admin. R. (hereinafter "Hive's MJAR"), ECF No. 65; RELI's Cross-Mot. for J. on the Admin. R. (hereinafter "RELI's MJAR"), ECF No. 66.

Because TSA properly rejected CI's late attempt to modify its bid and reasonably disqualified CI's original bid for containing a material error, Plaintiff's Motion for Judgment on the Administrative Record is **DENIED** and Defendant's and Defendant-Intervenors' Cross-Motions for Judgment on the Administrative Record are **GRANTED**. Defendant's Motion for a Status Conference is **MOOT**.

## II.     Factual Background

### A.     The Solicitation

On February 26, 2023, TSA issued a Request for Quote ("RFQ" or "Solicitation"), which was amended ten times. Tab 20.1 at AR 828; Tab 10 at AR 269 (denoting date Solicitation was issued). The RFQ solicited Integrated Program Management Support Services ("IPMSS") to help individual TSA program offices achieve performance goals within their budgets and comply with Department of Homeland Security acquisition directives. Tab 20.1 at AR 829. The Agency intended to award Blanket Purchase Agreements ("BPAs") under Federal Acquisition Regulation ("FAR") Subpart 8.4. Tab 20.1 at AR 828–29, 867.

Under FAR 8.4, an agency may award a BPA to eligible suppliers with contracts in the General Service Administration's ("GSA's") Multiple Award Schedule ("MAS") program, also known as the Federal Supply Schedule program. FAR 8.401. A supplier must first enter into a MAS contract for a category of services with the GSA, after which an agency requiring comparable services can award a BPA through a separate solicitation. *See id.* The RFQ in this case sought offerors with MAS contracts under Category 541611: Management and Financial Consulting, Acquisition and Grants Management Support, and Business Program and Project Management Services. Tab 20.1 at AR 828, 845. TSA intended to award up to three BPAs, but "reserve[d] the right to award more, less or even no BPA." *Id.* at AR 867.

The procurement was divided into two phases covering three factors. *Id.* In Phase I, offerors submitted information about Factor 1 (Prior Experience) describing their experience within the last five years conducting work similar to each area of support identified in the Solicitation's Scope of Work. *Id.* at AR 869. TSA assigned each Phase I submission a score of High, Some, or Low Confidence, indicating the Agency's "confidence that the Quoter

understands the requirement . . . [and] will be successful in performing the contract." *Id.* at AR 873–74. The Agency advised the offerors with the highest-rated Phase I submissions to proceed to Phase II and recommended all other offerors not to proceed, although they could nevertheless elect to do so. *Id.* at AR 869–70. Twenty-four offerors submitted Phase I bids, of which only five, including Defendant-Intervenors, received High Confidence scores and recommendations to proceed. Tab 48 at AR 1566. Plaintiff received a Low Confidence rating—the lowest score— and a recommendation not to proceed. *Id.* It was the only offeror that elected to proceed against the Agency's recommendation. *See* Tabs 51–56b (Phase II submissions).

Phase II requested quotes for Factor 2 (Technical Approach and Management Approach) and Factor 3 (Price). Tab 20.1 at AR 867. For Factor 3, offerors were required to complete an attached Price Spreadsheet, which included a Labor Categories and Rates sheet. *Id.* at AR 872; Tab 18a at AR 768 (Price Spreadsheet). The sheet listed the Solicitation's required Labor Categories ("LCATs") in Column A, a description of each LCAT in Column B, and the required education and experience for each LCAT in Column C. Tab 18a at AR 768. In Columns D, E, and F, offerors provided the "Equivalent GSA LCAT" from their MAS contract, as well as an equivalent description and experience requirement. *See id.*; Tab 20.1 at AR 872. The RFQ stated: "Labor categories, labor category descriptions, education/experience, and rates must be clearly mapped to [the offeror's] GSA schedule contract." Tab 20.1 at AR 872. It further warned: "If any of the equivalent GSA Labor Categories, GSA Labor Category Descriptions, and Education/Experience do not clearly map to the Government provided Labor Categories, Labor Category Descriptions, and Education/Experience, the Quoter may be eliminated from award consideration." *Id.* at AR 874. It repeated: "Failure by a Quoter to comply with Attachment 1 Price Instructions, as previously outlined, may result in an elimination from award consideration." *Id.*

### B.   CI's Phase II Submission

On December 11, 2023—the day submissions were due—CI submitted its Phase II quote. Tab 51 at AR 1616. In its Price Spreadsheet, next to the TSA LCAT "Acquisition Support Specialist," CI listed its Equivalent GSA LCAT as "Associate Management Consultant." Tab 51c at Sheet "Labor Categories and Rates," Column B, Row 24. It provided the following Equivalent GSA Labor Category Description:

> Experience in providing advice, assistance, guidance or counseling in support of management, organizational, and business improvement that may include studies, strategic, business, action planning or advising clients related to information technology strategies and plans. Serves as a team member working under specific direction from senior staff or a project manager supporting one or more tasks, applies wide spectrum of disciplines for planning, analyses, design, implementation and support of assigned tasks. Associate Management Consultants comply with all U.S. employment laws and customer security requirements.

*Id.* at Column C, Row 24.

On February 13, 2024, after completing its initial evaluation of Phase II quotes, TSA informed CI its "Associate Management Consultant equivalent LCAT description does not clearly map to that of TSA's Acquisition Support Specialist LCAT description." Tab 61 at AR

3

2227–29.  The Agency allowed offerors to submit revised Phase II quotes by 10:00 AM on March 4, 2024.  Tab 17.1 at AR 697.  CI timely submitted its revised Phase II Quote.  Tab 67 at AR 2598.  It did not change a single word of its Associate Management Consultant description.  Tab 67d at Sheet "Labor Categories and Rates," Column E, Row 24; Tab 101 at AR 4321 (comparison of original and revised quotes).  Nonetheless, under a column labeled "Additional Narrative," CI added the following:

> Furthermore, even though CI presently is fully responsive to the TSA Acquisition Support Specialist LCAT requirements . . . CI is initiating a review and *intends to request to GSA to modify the Associate Management Consultant LCAT* . . . as necessary to enhance and provide further clarity to demonstrate that its education/experience and LCAT description are materially equivalent to that of the TSA Acquisition Support Specialist LCAT.  CI cannot control GSA's processing of our MAS Schedule contract modifications including timing.  However, we will endeavor and commit to obtaining any LCAT modifications needed prior to the date that TSA awards the BPAs resulting from the RFQ.

Tab 67d at Sheet "Labor Categories and Rates," Column G, Row 24 (emphasis added).

In a communications letter to CI on March 26, 2024, TSA again informed the offeror its Associate Management Consultant description did not "clearly map" to TSA's Acquisition Support Specialist description.  Tab 73 at AR 2920.  The Agency instructed CI to "confirm where in CI's GSA LCAT Associate Management Consultant description that it states services in contracting, procurement, or acquisition activities."  *Id.*  The Agency gave offerors until 10:00 AM on April 3, 2024 to submit a second revised Phase II quote.  *Id.*; Tab 20.1 at AR 868.

Despite stating on March 4, 2024 that it would request the GSA to modify its Acquisition Support Specialist LCAT, CI did not do so until March 27, 2024.  Pl.'s MJAR at 7.  On April 1, 2024, CI emailed the Agency to ask if it would grant an extension of the April 3 deadline until April 15, 2024.  Tab 101 at AR 4396.  The Agency replied, "[n]o further extension will be granted."  *Id.* at AR 4395.

At 1:17 AM on April 3, 2024, the day quotes were due, Plaintiff submitted its second revised Phase II quote.  *Id.* at AR 4394.  CI acknowledged GSA had not yet approved its modification to the Associate Management Consultant LCAT.  *Id.*  Instead, Plaintiff told TSA that "GSA is processing and has verbally approved this modification and it is our understanding all parties will sign the modification this week.  The modification award is expected [to be] effective on or about April 3, 2024, which well in advance the [sic] estimated TSA BPA award announcement."  Tab 80 at AR 3239.

At 12:48 PM, over two hours past the 10:00 AM deadline, CI sent TSA the signed GSA modification, acknowledging that it was "signed 4/3/2024 shortly after the 10AM deadline for IPMSS revisions."  Tab 101 at AR 4390.  TSA did not reply or indicate acceptance.  *See generally id.*  Instead, the Agency filed an internal memo rejecting CI's submission as late.  Tab 87 at AR 3582.  The memo noted that in the 1:17 AM submission, "CI was offering an off-contract service that it did not have contractual authority to offer."  *Id.* at AR 3584.  The Agency determined the 12:48 PM submission was late and "was not in compliance with the express instructions in the 26 March 2024 Communications Letter, which stated that the final revised quote must be received no later than 10 am on 3 April 2024."  *Id.*

4

The Agency also noted CI's contract with the GSA was MAS Category 541611, which incorporates FAR 52.212-1. *Id.* at AR 3585. The provision states:

> "Offerors are responsible for submitting offers, and any modifications, revisions, or withdrawals, so as to reach the Government office designated in the solicitation by the time specified in the solicitation. . . . Any offer, modification, revision, or withdrawal of an offer received at the Government office designated in the solicitation after the exact time specified for receipt of offers is 'late' and will not be considered."

*Id*. (quoting FAR 52.212-1(f)(1) & (2)(i)). The provision allows an exception if "the Contracting Officer determines that accepting the late offer would not unduly delay the acquisition" and one of the following conditions applies:

> (A) If it was transmitted through an electronic commerce method authorized by the solicitation, it was received at the initial point of entry to the Government infrastructure not later than 5:00 p.m. one working day prior to the date specified for receipt of offers; or
>
> (B) There is acceptable evidence to establish that it was received at the Government installation designated for receipt of offers and was under the Government's control prior to the time set for receipt of offers; or
>
> (C) If this solicitation is a request for proposals, it was the only proposal received.

*Id*. (quoting FAR 52.212-1(f)(2)).

Plaintiff's proposal was removed from award consideration for two reasons. *Id.* at AR 3594–95. First, it submitted its proposal late. *Id.* at AR 3586. The Agency's IT department determined CI's submission was not digitally sent before the 10:00 AM deadline. *Id.* CI emailed the submission at 12:48 PM and TSA received it at 12:52 PM. *Id.* Therefore, the Agency concluded "no exception to a late submission under FAR 52.212-1 applies," and it "cannot accept the submission." *Id.* The late modification "was thus not evaluated." Tab 88 at AR 3588. Second, the Agency reiterated that CI's prior submitted LCAT did "not clearly map to TSA's Acquisition Support Specialist LCAT description" because it did "not provide services in contracting, procurement, or acquisition activities as written at the time of the Quote due date." *Id.* TSA also assessed CI a score of "Some Confidence" for Factor 2 (Technical and Management Approach), although this score was not the Agency's stated reason for disqualifying CI. *See* Tab 90e at AR 3664; Tab 93a at AR 3779.

Three other Phase II bidders were eliminated from consideration for submitting GSA Equivalent LCATs that did not clearly map to the provided LCATs. Tab 88 at AR 3589–95. The Agency found the remaining two bidders, Hive and RELI, submitted LCATs that all clearly mapped and roughly matched the Solicitation's cost estimates. Tab 90e at AR 3665. On May 23, 2024, TSA awarded a BPA to both Hive and RELI. Tab 91 at AR 3667; Tab 92 at AR 3723. Both bidders also received "High Confidence" scores for Factor 1 (Prior Experience) and "Some Confidence" scores for Factor 2 (Technical and Management Approach). Tab 90e at AR 3664. Because the Solicitation contemplated three awards and TSA awarded only two and disqualified all other bidders, the Agency did not analyze the trade-offs between the awardees' offers and others. *Id*. at AR 3665–66.

On June 3, 2024, CI submitted a post-award bid protest to the Government Accountability Office ("GAO"). Tab 118 at AR 4980. Plaintiff argued the General Services Acquisition Regulation ("GSAR") establishes that the "effective date of any modification is the date specified in the modification," which in its case was April 3, 2024. *Id.* at AR 4999 (quoting 48 C.F.R. § 552.238-82(c)). CI reasoned "there is no legal authority that the modification is *not* effective for the entire calendar day, commencing at the start of the business day at GSA—which on 3 April 2024 was approximately 8 a.m.—at least two hours before the deadline for each quoter to submit its final IPMSS Phase II quotation." *Id.* And it believed the Agency's requirement that modifications must contain services which are available on offerors' signed GSA contracts was an unstated evaluation requirement. *Id.* at AR 5001.

The GAO rejected both arguments. Tab 126a at AR 6702–03. It found the GSAR's mention of an "effective date" did not negate the Agency's ability to set an effective time for a deadline. *Id.* at AR 6702. Furthermore, because an "agency may not use [MAS] procedures to purchase goods or services that are not contained on an awardee's [MAS] contract . . . where an agency announces its intent to order from an existing [MAS], all goods or services quoted must be on the vendor's schedule contract." *Id.* at AR 6703 (citations omitted). Therefore, the GAO denied the protest. *Id.*

### III.    Procedural History

On October 29, 2024, Plaintiff filed the instant Complaint. *See* Compl., ECF No. 1. The next month, Defendant filed the Administrative Record. ECF No. 29. On December 17, 2024, Plaintiff filed Motions to Complete and Amend the Administrative Record with documents from a prior 2019 procurement. Mot. to Complete Admin. R. at 1–2, ECF No. 34; ECF No. 35. On January 30, 2025, the Court denied the Motions because Plaintiff did not show clear evidence the existing record was incomplete and the prior procurement documents were unnecessary for effective judicial review. *Competitive Innovations, LLC v. United States*, 175 Fed. Cl. 296, 308 (2025), ECF No. 43.

After denying Plaintiff's Motions, the Court set an April 10, 2025 deadline to complete briefing. ECF No. 45. Plaintiff subsequently filed five Motions for Extensions of Time to submit its MJAR, four of which the Court granted. *See* ECF Nos. 47, 48, 49, 52, & 54. The Court denied Plaintiff's fifth requested extension. ECF No. 55. On March 14, 2025, CI filed its MJAR, but it was six pages over the thirty-page limit set by the Court's rules. *See* ECF No. 56. The Court struck the Motion, and Plaintiff re-filed its MJAR four days later. ECF No. 57 at 1.

Subsequently, Defendant filed a Motion to Complete the Administrative Record with Plaintiff's consent. ECF No. 58. The Motion proposed a new briefing schedule, which allowed Plaintiff to file a revised MJAR by April 18. *Id.* at 2. The Court granted the Motion. ECF No. 59. After Plaintiff filed its revised MJAR, Defendant filed two additional Motions for Extensions of Time for its Response and Cross-MJAR. ECF Nos. 63 & 64. The Court granted both Motions. After Defendant and Defendant-Intervenors filed their Cross-MJARs, Plaintiff requested another extension of time for its Response and Reply, proposing a June 2, 2025 deadline. ECF No. 68 at 1–2; ECF No. 68-1 at 1–2. The Court granted the extension.

The day its Response was due, Plaintiff filed yet another Motion for Extension of Time and a Motion for Leave to exceed the page limit by ten pages. ECF Nos. 69 & 70.[2] The Court granted leave to exceed the page limit but did not grant the extension. *See* ECF No. 73. CI filed an unfinished Response filled with incomplete citations, among other errors. *See* ECF No. 71 at 7, 8 n.5, 9, 11, 11 n.8, 13, 14 n.9, 16, & 17 (citing to "xx," "yy," or "zz"). CI moved to correct its filing, requesting another extension. ECF No. 72 at 1–2. The Court granted Plaintiff a single-day extension. Plaintiff filed two corrected Responses on June 4, 2025. ECF Nos. 73 & 74. It then moved to strike the first Response as mistakenly filed because it included "bubble comments" meant for internal review. ECF No. 76. The Court granted this Motion.

The parties finished briefing without further extensions and filed the Joint Appendix on June 23, 2025. ECF No. 80. Then on July 23, 2025, Defendant filed a Motion for a Status Conference, informing the Court for the first time that the Agency's bridge contract is set to expire on August 8, 2025. ECF No. 81 at 2. The Cross-MJARs are now ripe for review.

## IV. Legal Standards

The Court has jurisdiction to hear bid protests and reviews an agency's award decision under the standard set forth in the Administrative Procedure Act ("APA"). 28 U.S.C. § 1491(b)(1), (4). The Court must determine whether the Government "acted without rational basis or contrary to law when evaluating the bids and awarding the contract." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). Thus, a "bid award may be set aside if either: (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted).

Contracting officers are "entitled to exercise discretion upon a broad range of issues" in the procurement process. *Id.* (quotation omitted). When challenging that discretion, a disappointed bidder bears a "'heavy burden' of showing that the award decision 'had no rational basis.'" *Id.* at 1333 (quotation omitted). If a reviewing court finds a reasonable basis for an agency's action, "the court should stay its hand." *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quotation omitted); *see also Saliense Consulting LLC v. United States*, 176 Fed. Cl. 803, 813 (2025) (citing *HealthRev, LLC v. United States*, 172 Fed. Cl. 73, 85 (2024)). When alleging a legal violation in the procurement, "the disappointed bidder must show 'a clear and prejudicial violation of applicable statutes or regulations.'" *Impresa*, 238 F.3d at 1333 (quotation omitted). If the Government's conduct fails APA review, the disappointed bidder must show prejudice by proving there was a "substantial chance" it would have received the contract award "but for" the Government's errors. *Bannum*, 404 F.3d at 1351 (quotation marks and citation omitted).

---

[2] Plaintiff's counsel cited "an unexpected and unanticipated adverse event" in another case as good cause for the extension. ECF No. 69 at 2. The adverse event was a motion for sanctions against him. See ECF No. 72 at 1; Mem. Supp. Mot. to Dismiss and Sanctions at 1, *Verificient Techs., Inc. v. Dutta*, No. 659644/2024 (N.Y. Sup. Ct. N.Y. Cty., filed Dec 13, 2024), Doc. No. 17. That motion was filed on May 30, 2025—three days before the June 2 deadline for Plaintiff's Motion in this case. *Id.* Plaintiff did not file its request for an extension until the due date. ECF No. 69. Despite the late request, an extension was granted. ECF No. 73.

The Court does not review the procurement decision de novo; it is limited to the record that was before the procuring agency. *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009). The Court "is required to make factual findings . . . from the record evidence as if it were conducting a trial on the record." *Bannum*, 404 F.3d at 1357.

For any claim related to a procurement, a plaintiff must possess "statutory standing." *Acuity-CHS Middle E. LLC v. United States*, 173 Fed. Cl. 788, 796 (citing *CACI, Inc.-Fed. v. United States*, 67 F.4th 1145, 1151 (Fed. Cir. 2023)). To establish statutory standing, a plaintiff must show it was an interested party with "a substantial chance of winning the award" and it was "prejudiced by a significant error in the procurement process." *REV, LLC v. United States*, 91 F.4th 1156, 1163 (Fed. Cir. 2024) (citations omitted); *Competitive Innovations*, 175 Fed. Cl. at 302 (citations omitted).

## V.    Discussion

In federal procurements, "late is late." *eSimplicity, Inc. v. United States*, 162 Fed. Cl. 372, 377 (2022) (citation omitted). And "submission deadlines are strictly enforced across the board." *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1381 (Fed. Cir. 2009). TSA properly rejected CI's attempts to modify its Phase II Quote because its 12:48 PM submission was beyond the 10:00 AM deadline and its 1:17 AM submission included language unapproved by the GSA. Having rejected the late modification, TSA reasonably disqualified CI's original submission because it did not comply with the Solicitation's requirements.

### A.    TSA Reasonably Rejected CI's Phase II Quote Modification.

#### 1.    CI's Submission Was Late.

CI argues its modified Associate Management Consultant LCAT—submitted two hours and forty-eight minutes after the 10:00 AM deadline—was not, in fact, late. Pl.'s MJAR at 20–24. But any modifications submitted "after the *exact time* specified for receipt of offers is 'late' and will not be considered" unless certain exceptions apply. FAR 52.212-1(f)(2)(i) (emphasis added). The provision is also called the "late is late" rule. *eSimplicity*, 162 Fed. Cl. at 377 (citation omitted). Under the rule, "[o]fferors are responsible for submitting offers, and any modifications, . . . so as to reach the Government office designated in the solicitation by the time specified in the solicitation." FAR 52.212-1(f); Tab 80 at AR 3585. "[S]ubmissions received even moments after the deadline are disqualified." *eSimplicity*, 162 Fed. Cl. at 377 (citation omitted).

The RFQ stated the offerors' "MAS Category 541611 clauses are incorporated into *this BPA*." Tab 20.1 at AR 845 (emphasis added). The clauses in CI's MAS Category 541611 Contract included FAR 52.212-1, thus the RFQ incorporated FAR 52.212-1.[3] TSA cited FAR 52.212-1 to determine it could not accept CI's late quote. Tab 87 at AR 3585–86. CI claims this

---

[3] GSA Contracts Online, *View Contract Clauses,*
https://www.gsaelibrary.gsa.gov/ElibMain/contractClauses.do?scheduleNumber=MAS&contractNumber=47QTCA20D0055&contractorName=COMPETITIVE+INNOVATIONS+LLC&duns=GCQ7KCPCCEF1&listFor=C&view=clauses (CI MAS Contract Clauses) (last visited July 29, 2025); Tab 87 at AR 3585.

provision did not apply to the Solicitation because the RFQ incorporated MAS Contract clauses into "this BPA" and the "RFQ is *neither* a BPA nor a BPA order." Pl.'s MJAR at 20–21. This interpretation is incorrect. As Defendant notes, the RFQ is partially titled a "Blanket Purchase Agreement" and refers to itself in the first paragraph as "this Blanket Purchase Agreement (BPA)." Def.'s MJAR at 13 (citing Tab 20.1 at AR 828–29). The RFQ's incorporation of the MAS Contract clauses into "this BPA" reasonably notified CI it was incorporating those clauses into the Solicitation requirements. Therefore, the Solicitation incorporated the FAR's "late is late" rule.

Furthermore, CI waived its ability to argue the RFQ's incorporation of its MAS Contract clauses was ambiguous. When a solicitation's text contains a patent ambiguity, a bidder has "a duty to seek clarification from the government, and its failure to do so precludes acceptance of its interpretation in a subsequent action against the government." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007) (internal quotation marks and quotation omitted). And a bidder must challenge any patent ambiguity before the contract is awarded. *Id.* at 1316. The Solicitation included the contested incorporation language in the first version of the RFQ, issued February 26, 2023. Tab 10a at AR 288; *see* Tab 20.1 at AR 845. Since TSA did not grant awards until May 23, 2024, CI had over a year to challenge or request clarification of the MAS Contract clauses, including FAR 52.212-1. *See* Tab 91 at AR 3667 (executing contract with Hive); Tab 92 at AR 3723 (executing contract with RELI). Because it did not, Plaintiff must accept the Agency's reasonable interpretation of the RFQ's incorporation language. *See Blue & Gold Fleet*, 492 F.3d at 1313.

CI argues the proper timeliness rule to apply is GSAR regulation 48 C.F.R. § 552.238-82(c), declaring "the GSAR reigns supreme." Pl.'s MJAR at 22. However, this provision governs modifications to MAS contracts by the GSA, not quotes for solicitations by other agencies. *See generally* 48 C.F.R. § 552.238-82. Therefore, there is no conflict between this GSAR provision and FAR 52.212-1.

### 2. TSA Reasonably Exercised its Discretion to Deny an Extension.

CI argues the Contracting Officer abused his discretion by failing to extend the submission deadline. Pl.'s MJAR at 24–25. Plaintiff asserts the March 26 notification that it needed to modify its LCAT by 10:00 AM on April 3 "was not calculated to provide CI with a fair opportunity to improve its" quote "or to maximize the Agency's ability to obtain the best value." *Id.* at 25. According to Plaintiff, if the Agency extended the deadline "by even one day," it would have acted reasonably. *Id.* CI does not explain why nine days to submit would be reasonable but eight was not.

The facts belie Plaintiff's reasoning. CI's tardy submission was the foreseeable consequence of its own deleterious conduct. The Agency first notified CI that its Associate Management Consultant LCAT description did not "clearly map" to the Solicitation on February 13, 2025. Tab 61 at AR 2227–29. Three weeks later, on the date of the next quote deadline, CI elected to submit the exact same LCAT description without requesting a modification from the GSA. Tab 67d at Sheet "Labor Categories & Rates," Column E, Row 24. Indeed, Plaintiff did not do so until March 27, 2024—six weeks after the Agency first notified it that its LCAT did not map—despite previously pledging it would do so on March 4, 2024. *See id.* at Column G, Row 2; Pl.'s MJAR at 7.

9

Given the ample opportunities Plaintiff had to fix its error, the April 3, 2024 10:00 AM deadline was reasonable. Contracting officers are "entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." *Impresa*, 238 F.3d at 1332 (quotation and internal quotation marks omitted). There is no reason to interfere with that discretion. Furthermore, without explaining why the eight-day window was unreasonable, Plaintiff's complaint amounts to "mere disagreement with the agency's judgment," which is "not sufficient to establish the agency acted unreasonably." *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 384 (2003) (citation omitted).

### 3. TSA Did Not Apply Unstated Evaluation Criteria by Requiring CI's GSA Equivalent LCATs To Be on its GSA MAS Contract.

CI alleges TSA unreasonably disregarded its 1:17 AM submission, which proposed modifications to its LCAT that were not yet in its MAS Contract with the GSA. Pl.'s MJAR at 18. Plaintiff argues the Agency applied an "unstated requirement" that modifications needed to be "on contract" by the submission deadline. *Id*. It asserts "nothing put CI on reasonable notice that it could *not* quote the Modified AMC LCAT that would be in effect on CI's FSS Schedule Contract" on April 3 and thereafter. *Id.* at 18–19. Defendant responds that CI's argument ignores the Solicitation's plain language, which "clearly communicated to CI that it needed to submit its GSA Price List." Def.'s MJAR at 12.

CI's argument again fails. "[F]or a plaintiff to succeed on a claim of undisclosed evaluation criteria, it must show that the procuring agency used a 'significantly different basis in evaluating the proposals than was disclosed' in the solicitation." *Poplar Point RBBR, LLC, v. United States*, 147 Fed. Cl. 201, 219 (2020) (alteration in original) (quoting *PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 536–37 (2010)). Here, the requirement that a GSA Equivalent LCAT must be on an offeror's approved GSA MAS Contract was not significantly different from the RFQ's explicit requirements. Indeed, the RFQ instructed, "[l]abor categories, labor category descriptions, education/experience, and rates *must be clearly mapped to your GSA schedule contract*." Tab 20.1 at AR 874 (emphasis added). It advised: "If any of the equivalent GSA Labor Categories, GSA Labor Category Descriptions, and Education/Experience do not clearly map to the Government provided Labor Categories, Labor Category Descriptions, and Education/Experience, the Quoter may be eliminated from award consideration." *Id*. This language put CI on notice that the categories in the RFQ must map to its existing "GSA schedule contract," not to an aspirational contract which the GSA has not yet approved. And the RFQ's references to a "GSA Labor Category Description" indicate the GSA's prior approval is required.

Furthermore, FAR Subpart 8.4 requires offered services to be on the bidder's MAS contract and part of the MAS Program. As the GAO noted, "an agency may not use [MAS] procedures to purchase goods or services that are not contained on an awardee's [MAS] contract . . . . [W]here an agency announces its intent to order from an existing [MAS], all goods or services quoted must be on the vendor's schedule contract." Tab 126a at AR 6703. CI counters that the "on contract" requirement only applies to Task Orders an agency issues to an awardee *after* establishing the BPA, not when it seeks to award a BPA. Pl.'s MJAR at 20.

This is incorrect. The FAR provides: "[W]hen establishing a BPA . . . or placing orders under [MAS] contracts using the procedures of 8.405, ordering activities shall not seek competition outside of the [Multiple Award] Schedules." FAR 8.404(a). An ordering activity is

10

defined as "an activity that is authorized to place orders, or establish blanket purchase agreements (BPA), against the General Services Administration's (GSA) Multiple Award Schedule contracts." FAR 8.401. The RFQ was an "ordering activity" because it sought to establish BPAs against MAS contracts under FAR Subpart 8.4. Tab 20.1 at AR 828–29, 867. Accordingly, TSA was prohibited from soliciting offers "outside" of MAS contracts, including CI's anticipated description of its Associate Management Consultant position. *See* FAR 8.404(a).

### B. TSA Reasonably Rejected CI's Quote for Failing to Comply with the Solicitation.

CI further argues the Agency unreasonably found the Associate Management Consultant LCAT in Plaintiff's timely-submitted quotes did not "clearly map" to the Agency's Acquisition Support Specialist LCAT. Pl.'s MJAR at 25–26. Plaintiff contends its LCAT only needed to be "consistent with the function" of the required LCAT to clearly map. *Id.* at 25 (citing *HomeSource Real Est. Asset Servs., Inc. v. United States*, 94 Fed. Cl. 466, 486 (2010), *aff'd*, 418 F. App'x 922 (Fed. Cir. 2011)). It adds that "differences in job titles or qualifications are *not* dispositive." *Id.* at 26 (quoting *Eagle Techs., Inc. v. United States*, 163 Fed. Cl. 692, 703 (2022)). CI maintains that while the job titles of its Associate Management Consultant LCAT differed from the Acquisition Support Specialist LCAT, the job description was consistent with the required LCAT function. *Id.*

The Agency reasonably disagreed. It did not reject CI's LCAT because of differences in the job title but because it did "not provide services in contracting, procurement, or acquisition activities as written at the time of the Quote due date." Tab 88 at AR 3588. By contrast, the Acquisition Support Specialist LCAT required applying "contracting laws, principles, and procedures to assist in the planning and completion of contracting and procurement activities . . . , preparing and issuing solicitation documents, preparing award and modification documentation, and assisting [the] program office in contract administration as needed." Tab 18a at AR 768. Seeing none of those duties covered in CI's LCAT description, the Agency reasonably decided that CI's LCAT did not map to its own.

The Agency properly disqualified CI for including an LCAT which did not clearly map to the Solicitation's requirements. A "proposal which ultimately fails to conform to the material terms of the solicitation should be considered unacceptable." *E.W. Bliss Co. v. United States*, 77 F.3d at 445, 449 (Fed. Cir. 1996) (quotation omitted). The Solicitation explained "[i]f any of the equivalent GSA Labor Categories, GSA Labor Category Descriptions, and Education/Experience do not clearly map to the Government provided Labor Categories, Labor Category Descriptions, and Education/Experience, the Quoter may be eliminated from award consideration," and it repeated, "[f]ailure by a Quoter to comply with Attachment 1 Price Instructions, as previously outlined, may result in an elimination from award consideration." Tab 20.1 at 874. Following this explicit language, TSA reasonably concluded the noncompliant LCAT rendered CI's bid unacceptable.

CI claims the Agency applied a different standard when it concluded RELI's Equivalent GSA LCAT did map to the requirements, pointing out that RELI's LCAT contains "only one conclusory reference to 'procurements and acquisitions functional expertise.'" Pl.'s MJAR at 27 (quoting Tab 70b at Sheet "Labor Categories & Rates," Column E, Row 24). But this distinction

11

is enough. While the FAR requires an agency to treat offerors fairly and impartially, an "agency is under no obligation to assign dissimilar proposals the same evaluation rating." *Off. Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020) (citing FAR 1.602-2). Instead, "a protestor must show that the agency unreasonably downgraded its proposal for deficiencies that were substantively indistinguishable or nearly identical from those contained in other proposals." *Id.* (internal quotation marks and quotation omitted). CI's and RELI's LCATs were substantively distinguishable—one contained on-contract language relating to procurement and acquisition, and one did not. Thus, TSA fairly concluded RELI's LCAT sufficiently mapped to the required functions.

### C. CI Lacks Statutory Standing for the Remainder of its Claims.

Because Plaintiff was properly disqualified from the Solicitation, it lacks statutory standing to challenge other Agency actions during the procurement. To possess statutory standing for the remainder of its claims, CI must demonstrate it possessed a "substantial chance" of winning an award. *REV, LLC*, 91 F.4th at 1163. As Defendant-Intervenors note, once CI was disqualified, it had no chance of winning and was not prejudiced by the outcome of the Solicitation. *See* Hive's MJAR at 6–7; RELI's MJAR at 13. Because the Court affirms the disqualification, Plaintiff lacks statutory standing, and the remainder of its claims must be dismissed. *See Acuity-CHS*, 173 Fed. Cl. at 796.

### D. Injunctive Relief is Not Warranted.

CI moves for injunctive relief, briefly arguing it "had a substantial chance and/or would have been selected as the third awardee." Pl.'s MJAR at 29. To obtain a permanent injunction, a plaintiff must show "(1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief." *PGBA, LLC v. United States*, 389 F.3d 1219, 1228–29 (Fed. Cir. 2004) (citation omitted). As explained above, CI has not succeeded on the merits of the case. Therefore, it is not entitled to an injunction.

## VI. Conclusion

For the reasons above, Defendant's and Defendant-Intervenors' Cross-Motions for Judgment on the Administrative Record are **GRANTED**. ECF Nos. 65, 66, & 67. Plaintiff's Motion for Judgment on the Administrative Record is **DENIED**. ECF No. 62. Defendant's Motion for a Status Conference is **MOOT**. ECF No. 81. The parties are **ORDERED** to file a Joint Status Report by **August 13, 2025** including any proposed redactions and must explain why the proposed redacted information qualifies as protected information under the Protective Order. *See* ECF No. 12. The Clerk is directed to enter Judgment.

**IT IS SO ORDERED.**

 s/ Carolyn N. Lerner  
CAROLYN N. LERNER  
Judge